CHILDREN'S HEALTHCARE IS A LEGAL DUTY, INC.; Steven Brown; Eve Brown; and Hillary Brown; and on behalf of a class of children in the state of Ohio similarly situated, Plaintiffs–Appellees,

v.

Joseph T. DETERS, Hamilton County, Ohio, Prosecutor; Fay Dupuis, Cincinnati, Ohio, City Solicitor, et al., Defendants,

Betty Montgomery, Attorney General of Ohio, Defendant–Appellant.

No. 95–3850.

United States Court of Appeals, Sixth Circuit.

Argued March 4, 1996.

Decided Aug. 5, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 20, 1996.

---

Scott T. Greenwood (briefed), Greenwood & Hudson, Cincinnati, OH, Robert J. Bruno (argued), Robert J. Bruno, Ltd., Burnsville, MN, for Children's Healthcare is a Legal Duty, Inc., Steven M. Brown.

Susan E. Ashbrook (argued and briefed), David A. Oppenheimer, Office of the Attorney General of Ohio, Columbus, OH, for Betty Montgomery.

Before: MARTIN and BATCHELDER, Circuit Judges; WISEMAN, District Judge.*

BATCHELDER, J., delivered the opinion of the court in Part I, in which MARTIN, J., and WISEMAN, D.J., joined, and also delivered a separate opinion in Parts II and III (pp. 1418–25).

BATCHELDER, Circuit Judge.

The plaintiffs filed this action under 42 U.S.C. § 1983 in the United States District Court for the Southern District of Ohio against several defendants. The district court, *inter alia*, rejected the contention of Ohio Attorney General Betty Montgomery, one of the defendants, that the plaintiffs lacked standing to bring this action, and held that the Eleventh Amendment to the United States Constitution does not bar the action against General Montgomery. *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 894 F.Supp. 1129, 1130–34 (S.D.Ohio 1995). General Montgomery appeals.[1]

The plaintiffs in this prospective class action are Children's Healthcare is a Legal Duty, Inc., an organization which says it fights "child abuse and neglect associated with religious practices," and Steven Brown and his minor children, Eve and Hillary. Brown's ex-wife and the children's mother, now known as Kim Strubbe, is a Christian Scientist. She believes in spiritual treatment of children's illnesses through prayer alone and does not allow the medical treatment Brown believes the children need. One of the daughters, Eve, has congenital kidney disease.

The plaintiffs allege that certain provisions of OHIO REV.CODE §§ 2919.22(A)[2] and 2151.03(B)[3] violate the First, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiffs specifically object to the second sentence of § 2919.22(A) and the first sentence of § 2151.03(B), which establish exemptions from the duty to provide adequate care for children and from prosecution for failure to provide such care, for persons who treat, by spiritual means, physical or mental illness or defect in children under their care. Plaintiffs contend that these provisions violate the Establishment Clause of the First Amendment,[4] which the Supreme Court since *Everson v. Board of Educ.*, 330 U.S. 1, 8–16, 67 S.Ct. 504, 508–12, 91 L.Ed. 711 (1947), has said applies to the states through the Fourteenth Amend-

---

* The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

1. The plaintiffs do not cross appeal.

2. OHIO REV.CODE § 2919.22(A) (1993 & Supp. 1995) provides:

   No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.

3. OHIO REV.CODE § 2151.03(B) (1994) provides:

   Nothing in this chapter shall be construed as subjecting a parent, guardian, or custodian of a child to criminal liability when, solely in the practice of his religious beliefs, he fails to provide adequate medical or surgical care or treatment for the child....

4. The merits of the claims are not before us.

ment. The plaintiffs further assert that the exemptions in the Ohio statutes deny equal protection and due process to the class of children in the charge of the exempted persons, as well as to parents and guardians who are not exempted.

## I. THE ELEVENTH AMENDMENT

The district court held that the Attorney General would represent the state's interest in this action. 894 F.Supp. at 1131. *Ex parte Young*, 209 U.S. 123, 155–58, 28 S.Ct. 441, 452–53, 52 L.Ed. 714 (1908), carves out an exception to Eleventh Amendment immunity. *E.g., Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984) (citing *Young*).[5] The district court found that the exception applied and denied General Montgomery's motion to dismiss. *See* 894 F.Supp. at 1134.[6] We conclude, however, that this action against the Attorney General of Ohio is barred by the Eleventh Amendment.

### A

■ Under *Young*,

individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected

an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action. 209 U.S. at 155–56, 28 S.Ct. at 452; *see also Western Union Tel. Co. v. Andrews*, 216 U.S. 165, 166, 30 S.Ct. 286, 287, 54 L.Ed. 430 (1910) (holding that *Young* applies precisely when a statute charges prosecutors with enforcement and they threaten and are about to commence proceedings to enforce the statute); *Dombrowski v. Pfister*, 380 U.S. 479, 483, 85 S.Ct. 1116, 1119, 14 L.Ed.2d 22 (1965) (calling *Young* "the fountainhead of federal injunctions against state prosecutions" and noting that federal judicial power is properly exercised when state officers "threaten and are about to commence proceedings" (quoting *Young*)); *Terrace v. Thompson*, 263 U.S. 197, 214, 44 S.Ct. 15, 17, 68 L.Ed. 255 (1923) (citations omitted); *Cavanaugh v. Looney*, 248 U.S. 453, 456, 39 S.Ct. 142, 143, 63 L.Ed. 354 (1919) (citations omitted); *Greene v. Louisville & I.R. Co.*, 244 U.S. 499, 506, 37 S.Ct. 673, 677, 61 L.Ed. 1280 (1917) (quoting *Young*); *Allinder v. Ohio*, 808 F.2d 1180, 1184 (6th Cir.) (Eleventh Amendment immunity does not "shield a state official attempting to enforce an unconstitutional act." (citing *Young*)), *appeal dismissed*, 481 U.S. 1065, 107 S.Ct. 2455, 95 L.Ed.2d 865 (1987); *but see Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665–66 n. 9 (6th Cir.1982) (disregarding *Young* in action against a gov-

---

**5.** Just this year, the Supreme Court recalled it had "held that through the Fourteenth Amendment, federal power extended to intrude upon the province of the Eleventh Amendment and therefore that § 5 of the Fourteenth Amendment allowed Congress to abrogate the immunity from suit guaranteed by that Amendment." *Seminole Tribe v. Florida*, —— U.S. ——, ——, 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 455, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976)). "*Fitzpatrick* was based upon a rationale ... that the Fourteenth Amendment, adopted well after the adoption of the Eleventh Amendment and the ratification of the Constitution, operated to alter the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment." *Id.* at ——, 116 S.Ct. at 1128 (citing *Fitzpatrick*, 427 U.S. at 454, 96 S.Ct. at 2670). Later, in discussing *Young*, the Court held that "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those

limitations and permitting an action against a state officer based upon *Ex parte Young*." *Id.* at ——, 116 S.Ct. at 1132. *Seminole Tribe* does not change the result of our analysis.

**6.** The district court relied on *Young*, 209 U.S. at 159–60, 28 S.Ct. at 454; *Thiokol Corp. v. Department of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (the Eleventh Amendment "does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief"); *Doe v. Wigginton*, 21 F.3d 733, 737 n. 3 (6th Cir.1994) (holding that "claims for prospective relief still may be brought against state officers in their official, as opposed to personal, capacity" (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985))); and *Graham*, 473 U.S. at 169 n. 18, 105 S.Ct. at 3107 n. 18 ("In an injunctive or declaratory action grounded on federal law, the State's immunity *can* be overcome by naming state officials as defendants." (citations omitted)).

ernor, because "substantial public interest in enforcing trade practices legislation" significantly obliged him to enforce state laws using his general authority (citations omitted)).

■ Courts have not read *Young* expansively. *E.g., Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909 (citing *Edelman v. Jordan,* 415 U.S. 651, 666–67, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974)). *Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute. *1st Westco Corp. v. School Dist. of Philadelphia,* 6 F.3d 108, 113 (3d Cir.1993) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1209 n. 9 (3d Cir.1988)); *see Long v. van de Kamp,* 961 F.2d 151, 152 (9th Cir.1992) (requiring "a connection between the official sued and enforcement of the allegedly unconstitutional statute [and also] a threat of enforcement" (citing *Young* )); *Kelley v. Metropolitan County Bd. of Educ.,* 836 F.2d 986, 990–91 (6th Cir.1987) (declining to apply *Young* when defendants were not threatening to enforce any unconstitutional act), *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988); *Sperry–Hutchinson Co. v. Kuhn,* 212 F. 555, 556 (E.D.Mich.1912) (declining to apply *Young* when an attorney general was not charged with enforcing a statute and had not threatened to enforce it (citing *Young; Fitts v. McGhee,* 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535 (1899))).

*Young* abrogates a state official's Eleventh Amendment immunity when a suit challenges the constitutionality of a state official's *action. Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909; *Banas v. Dempsey,* 742 F.2d 277, 287 (6th Cir.1984) (*Young* applies only when it is alleged state officials are acting contrary to federal law), *aff'd on other grounds,* 474 U.S.

64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1986); *Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 449, 459 n. 9 (6th Cir.1982) (recognizing that "an action against a state official must be 'based on a theory that the officer acted beyond the scope of his statutory authority or, if within that authority, that such authority is unconstitutional' in order to avoid the bar of the Eleventh Amendment" (quoting *Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 689–90, 102 S.Ct. 3304, 3317, 73 L.Ed.2d 1057 (1982))). *Young* "was based on a determination that an unconstitutional state enactment is void and that any action by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity...." *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986).[7] The reason for this "action" requirement is plain: In *Young,* the state officers held no

> special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for ... testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general.... That would be a very convenient way for obtaining a speedy judicial determination of ... constitutional law ..., but it is a mode which cannot be applied to the states ... consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.... In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitution-

---

**7.** Our opinions in *Doe* and *Thiokol,* on which the district court relied, 894 F.Supp. at 1134, are not to the contrary.

In *Doe,* a prisoner alleged, *inter alia,* that the defendant prison officials violated his rights by implementing and enforcing a prison policy, by subjecting him to a screening process, and by perusing his medical records. 21 F.3d at 736. We held that the Eleventh Amendment did not bar official-capacity claims for injunctive and declaratory relief which sought to prevent alleged future constitutional violations. *Id.* at 737.

The defendants in *Thiokol* included a state treasurer and a state revenue commissioner whom the plaintiff sued in their official capacities. 987 F.2d at 377. The plaintiff prayed that the court, *inter alia,* enjoin the state's collection of a particular state tax and prohibit the state from refusing to give a refund. *Id.* at 378. We noted that the Eleventh Amendment does not preclude official-capacity actions against state officials for prospective injunctive or declaratory relief, *id.* at 381 (citing *Young* ), and allowed the action to proceed against the two officials. *See id.* at 383.

al, ... such officer must have some connection with the enforcement of the act, or else it is merely making ... the state a party....

The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact....

*Young,* 209 U.S. at 157, 28 S.Ct. at 452–53.

██ Consistent with the *Young* requirement of action on the part of the state official, we note that the phrase "some connection with the enforcement of the act" does not diminish the requirement that the official threaten and be about to commence proceedings. *See, e.g., id.* at 155–56, 28 S.Ct. at 452. "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *1st Westco,* 6 F.3d at 113 (citing *Rode,* 845 F.2d at 1208); *see also Aerated Prods. Co. v. Department of Health,* 59 F.Supp. 652, 655 (D.N.J.1945) (citing *Young; Greene* ), *aff'd,* 159 F.2d 851 (3d Cir. 1947). Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend *Young* beyond what the Supreme Court has intended and held. *See Weinstein v. Edgar,* 826 F.Supp. 1165, 1167 (N.D.Ill.1993); *Mendez v. Heller,* 530 F.2d 457, 460 (2d Cir.1976) (an attorney general's duty to support the constitutionality of challenged state statutes and his duty to defend actions in which the state is interested do not constitute enforcement of the

statute in question); *see also Shell Oil Co. v. Noel,* 608 F.2d 208, 211 (1st Cir.1979) ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." (citing *Gras v. Stevens,* 415 F.Supp. 1148, 1152 (S.D.N.Y.1976))).

### B

██ The plaintiffs before us are not complaining of any action by General Montgomery. What we have here is not action, but inaction, and *Young* does not apply. The Attorney General did not threaten to commence and was not about to commence proceedings [8] against the plaintiffs,[9] much less proceedings to enforce an allegedly unconstitutional act.[10]

This action also does not fall within the *Young* exception, because the plaintiffs do not seek to *enjoin* the enforcement of an allegedly unconstitutional statute. *See Young,* 209 U.S. at 155–57, 28 S.Ct. at 452–53. Instead, the plaintiffs in effect pray that the federal courts *permit* a broader enforcement of certain statutes by striking down those provisions of the statutes which prevent their enforcement with respect to persons against whom the plaintiffs believe enforcement is proper. This would turn *Young* inside out.

Moreover, Ohio law delegates the enforcement of the challenged statutes to local prosecutors, not the Attorney General. *See gen-*

---

**8.** In that sense, we have the opposite of what the Supreme Court faced in *Morales v. Trans World Airlines, Inc.,* where attorneys general "had made it clear that they would seek to enforce" what was at issue, 504 U.S. 374, 380–81, 112 S.Ct. 2031, 2035, 119 L.Ed.2d 157 (1992), and suit was imminent. *See id.* at 381–83, 112 S.Ct. at 2036.

**9.** That the Attorney General also did not threaten to commence and was not about to commence proceedings against Strubbe is immaterial to this appeal, although it is consistent with the challenged statutes and may provide comfort to Strubbe.

**10.** On this basis, we distinguish *Zielasko v. Ohio,* 873 F.2d 957 (6th Cir.1989), in which the plaintiffs sought to have the federal courts enjoin future enforcement of a state constitutional provision they asserted violated the federal Constitu-

tion. We allowed the action to proceed under *Young. Id.* at 959. The provision prohibited one of the plaintiffs from running for a judgeship, because he was over 70. *Id.* at 958. In order to run, he had to fill out a declaration of candidacy which certified that he was qualified to seek office, which he was not, given the provision he wanted declared unconstitutional. We found that such a declaration of candidacy "is made under the *threat* of criminal penalty for 'election falsification.' " *Id.* at 959 (emphasis added). We also noted that the district court properly found that by signing the declaration, the judge would subject himself to "real and immediate (not merely conjectural or hypothetical) harm of criminal penalty." *Id.*

We cannot say anything analogous about the plaintiffs before us.

*erally* OHIO REV.CODE §§ 109.02 (Supp.1995), 109.14(A) (1994), 309.08(A) (Supp.1995), 1901.34(A)-(D) (Supp.1995). General Montgomery has no connection to the enforcement of the statutes. *Cf. Akron Ctr. for Reproductive Health v. Rosen,* 633 F.Supp. 1123, 1130 (N.D.Ohio 1986) (dismissing the Ohio Governor and Attorney General under the Eleventh Amendment, because they had no connection to enforcement of a statute, while noting that enforcement was clearly delegated to the state's prosecuting attorneys), *aff'd on other grounds,* 854 F.2d 852 (6th Cir. 1988), *rev'd on other grounds,* 497 U.S. 502, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990);[11] *Long,* 961 F.2d at 152 (instructing the district court to dismiss an attorney general on Eleventh Amendment grounds, after finding no "real likelihood" that he would employ his supervisory powers against the plaintiffs' interest); *1st Westco,* 6 F.3d at 114 (recalling a previous holding that the joining of a party based solely on his general obligation to uphold the law is appropriate only when there is a real likelihood or realistic potential that the connection will be used against the plaintiff's interest (quoting *Rode,* 845 F.2d at 1208)).

This action is akin to one in the Seventh Circuit in which the plaintiffs' action challenging the constitutionality of a state statute named as the defendant the state's Attorney General, who had never threatened to prosecute them and had no authority under the statute to do so. The Seventh Circuit's observation is equally appropriate here: "Plaintiffs apparently named the office of the Attorney General in an effort to obtain a judgment binding the State ... as an entity, a step that Congress did not authorize when enacting 42 U.S.C. § 1983 and that the [E]leventh [A]mendment does not permit in the absence of such authorization." *Sherman v. Community Consol. School Dist. 21,* 980 F.2d 437, 441 (7th Cir.1992) (citing *Fitzpatrick*), *cert. denied,* 508 U.S. 950, 113 S.Ct. 2439, 124 L.Ed.2d 658 (1993); *see also Los Angeles Branch, NAACP v. Los Angeles Unified School Dist.,* 714 F.2d 946, 953 (9th Cir.1983) (finding that the plaintiffs sued a governor as a surrogate for the state to evade Eleventh Amendment immunity (citing *Young* )), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2398, 81 L.Ed.2d 354 (1984).[12]

### C

In support of their view that the Eleventh Amendment does not bar this action against the Attorney General, the plaintiffs call our attention to the language in *Papasan* which states that "*Young*'s applicability has been tailored to conform as precisely as possible to those specific situations in which it is 'necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to "the supreme authority of the United States." ' " 478 U.S. at 277, 106 S.Ct. at 2940 (quoting *Pennhurst,* 465 U.S. at 105, 104 S.Ct. at 910). Placing this quotation in context, we note that it is part of a general discussion of the overall scope of the *Young* exception to Eleventh Amendment immunity, which acknowledges that *Young* "does not insulate from Eleventh Amendment challenge every suit in which a state official is the named defendant.... *Young* applies only where the underlying authorization upon which the named official *acts* is asserted to be illegal." *Id.* (emphasis added) (citing *Cory v. White,* 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982)). When read with the sentences which precede and follow it, the language the plaintiffs cite does not support their position:

> We have also described certain types of cases that formally meet the *Young* requirements of a state official *acting* inconsistently with federal law but that stretch that case too far and would upset the balance of federal and state interests that it embodies. *Young*'s applicability has been tailored to conform as precisely as possible to those specific situations in which it is "necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme

---

11. In *Akron Center,* the Northern District of Ohio distinguished our anomalous holding in *Allied Artists. See* 633 F.Supp. at 1129–30 (quoting *Allied Artists,* 679 F.2d at 666 n. 5).

12. We need not speculate about why the plaintiffs below, including Children's Healthcare is a Legal Duty, Inc., would have sought a judgment binding the state.

authority of the United States.' " Consequently, *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. *Id.* at 277–78, 106 S.Ct. at 2940 (emphasis added) (internal citation omitted).

### D

The district court erred in holding that General Montgomery has no Eleventh Amendment immunity in this action. The *Young* exception does not apply. We REVERSE the district court's holding that the Attorney General has no Eleventh Amendment immunity. Accordingly, we REMAND this action to the district court with instructions to DISMISS this action in its entirety.

BATCHELDER, Circuit Judge.

### II. THE *COHEN* DOCTRINE

Part I is the court's opinion. I write separately, in Parts II and III, to explain why the plaintiffs lack standing, and why I believe the court should address that issue, even though none of the parties raised it before us.

In her appellate brief, the Attorney General contested only the district court's ruling on the Eleventh Amendment. Asked at oral argument why she had not appealed the ruling on standing, she explained that the *Cohen* doctrine forecloses this option. *See generally Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 545–46, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949).

In *Cohen,* the Supreme Court addressed the appealability of a district-court order. Title 28 U.S.C. § 1291 (1993) grants courts of appeal "jurisdiction of appeals from all final decisions of the district courts ... except where direct review may be had in the Supreme Court." *Cohen* provided for excep-

tions to this norm for a small class of "collateral" orders. *See, e.g., Purnell v. City of Akron,* 925 F.2d 941, 945 n. 3 (6th Cir.1991) (citations omitted). "To come within the 'small class' of decisions excepted from the final-judgment rule by *Cohen,* the order [from which a party appeals] must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (citing *Abney v. United States,* 431 U.S. 651, 658, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977); *United States v. MacDonald,* 435 U.S. 850, 855, 98 S.Ct. 1547, 1549, 56 L.Ed.2d 18 (1978)), *quoted in Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144–46, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993).

Although the *Cohen* doctrine permits us to hear the Attorney General's appeal regarding Eleventh Amendment immunity, *see Sault Ste. Marie Tribe of Chippewa Indians v. Michigan,* 5 F.3d 147, 149–50 (6th Cir. 1993) (orders denying sovereign immunity are effectively unreviewable as part of a final decision (quoting *Puerto Rico Aqueduct,* 506 U.S. at 142–48, 113 S.Ct. at 687–89)), some circuits have relied on the *Cohen* doctrine in declining to rule on parties' standing. *See Triad Assocs., Inc. v. Robinson,* 10 F.3d 492, 496–97 n. 2 (7th Cir.1993) (citations omitted); *Shanks v. City of Dallas,* 752 F.2d 1092, 1099 n. 9 (5th Cir.1985) (citations omitted); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 474–75 (2d Cir.1974) (citations omitted).

The court below found that the plaintiffs had standing. 894 F.Supp. at 1132–34. Although this conclusively determined a disputed question and resolved an important issue completely separate from the merits of the action, standing is *not* effectively unreviewable upon appeal from a final judgment. *See Triad,* 10 F.3d at 496 n. 2 ("Limitations issues fail the last prong of this test. Similarly, a denial of a motion to dismiss for lack of standing does not qualify as a final judg-

ment and thus is not eligible for review at this time." (citations omitted)).[1]

At first glance, this might suggest that we may not consider the plaintiffs' standing. *See id.* at 496–97 n. 2. Indeed, that might have been a holding I would endorse had the appellant raised only the issue of standing. However, when an appellant properly appeals another issue, the issue of standing comes before us as well. Constitutional standing is *always* a threshold inquiry for us to make before asserting jurisdiction over an appeal. *Newsome v. Batavia Local School Dist.,* 842 F.2d 920, 922 (6th Cir.1988) (quoting *Allstate Ins. Co. v. Wayne County,* 760 F.2d 689, 691 (6th Cir.1985)); *United States v. Van,* 931 F.2d 384, 387 (6th Cir.1991) ("Standing is a threshold inquiry that a court must consider prior to addressing the merits of an appeal." (citing *T.H.E. Ins. Co. v. Naghtin,* 916 F.2d 1082, 1085 (6th Cir.1990); *Jaimes v. Toledo Metro. Housing Auth.,* 758 F.2d 1086, 1092 (6th Cir.1985))); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.,* 73 F.3d 546, 555 n. 22 (5th Cir.1996) (Standing "is a jurisdictional requirement, and may always be addressed for the first time on appeal." (citing *In re Taxable Mun. Bond Sec. Litig.,* 51 F.3d 518, 521 (5th Cir.1995))), *cert. denied,* —— U.S. ——, 117 S.Ct. 57, —— L.Ed.2d —— (1996); *see Mount Graham Red Squirrel v. Espy,* 986 F.2d 1568, 1581 (9th Cir.1993) (noting that court of appeals is always mindful of its obligation to raise standing *sua sponte* (citing *City of South Lake Tahoe v. California Tahoe Regional Planning Agency,* 625 F.2d 231, 233 (9th Cir.1980))).[2] We have an independent obligation to examine our own jurisdiction. Standing is perhaps the most important jurisdictional doctrine. *United States v. Hays,* —— U.S. ——, ——, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995) (quoting *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 230–31, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990)).

Even when the parties concede jurisdiction, we must satisfy ourselves of our own jurisdiction and that of the lower court. *FW/ PBS,* 493 U.S. at 231, 110 S.Ct. at 607 (quoting *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934)); *cf. Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.) (considering standing and justiciability despite the plaintiffs' contention that justiciability was not before the court of appeals (citing *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969); *City of South Lake Tahoe,* 625 F.2d at 233)), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

Standing is a qualifying hurdle which plaintiffs must clear when we raise the issue *sua sponte,* regardless of whether the plaintiffs have prevailed on the issue in the district court and the defendants have not raised it on appeal, *see Community First Bank v. National Credit Union Admin.,* 41 F.3d 1050, 1053 (6th Cir.1994); *Berlin v. Michigan Bell Tel. Co.,* 858 F.2d 1154, 1161 n. 5 (6th Cir.1988) (citing *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)); *Citizens Concerned for Separation of Church and State v. City and County of Denver,* 628 F.2d 1289, 1301 (10th Cir.1980) (court of appeals was obliged to consider appellees' standing to seek injunctive relief in the district court, even though neither party raised the issue on appeal (quoting *Juidice v. Vail,* 430 U.S. 327, 331, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977))), *cert. denied,* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981), or whether no one has raised the issue at all before the action reaches us. *See Director, Office of Workers' Compensation v. Newport News Shipbuilding & Dry Dock Co.,* —— U.S. ——, ——, ——, 115 S.Ct. 1278, 1282, 1288, 131 L.Ed.2d 160 (1995) (affirming a *sua sponte* finding by a court of appeals that the petitioner lacked standing); *Bzdzuich v. United States Drug Enforcement*

---

1. Holding that standing *is* effectively unreviewable might allow an immediate appeal whenever a district court finds plaintiffs have standing. I would decline to interfere with the district courts' dockets in this manner and thereby open the floodgates to our own docket.

2. We also have held that federal courts, being courts of limited jurisdiction, must examine their

subject-matter jurisdiction "throughout the pendency of *every* matter before them." *In re Wolverine Radio Co.,* 930 F.2d 1132, 1137 (6th Cir. 1991) (emphasis added), *cert. dismissed,* 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992). We adhered to this principle in *United Liberty Life Ins. Co. v. Ryan,* 985 F.2d 1320, 1325 (6th Cir.1993).

*Admin.,* 76 F.3d 738, 742 (6th Cir.1996) (citing *American Fed'n of State, County & Mun. Employees Local 506 v. Private Indus. Council,* 942 F.2d 376, 378 (6th Cir.1991)); *Newsome,* 842 F.2d at 922 (quoting *Allstate,* 760 F.2d at 691).

I would therefore proceed to consider the plaintiffs' standing.

## III. STANDING

The district court held that to demonstrate standing, a party must "show [1] that he personally has suffered some actual *or threatened* injury as a result of the putative illegal conduct of the defendant, and [2] that the injury *'fairly can be traced* to the challenged action' and [3] is likely to be redressed by a favorable decision...." 894 F.Supp. at 1132 (emphasis added) (ellipsis omitted) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)). The Supreme Court has tightened up the rules on standing, particularly with respect to the phrases emphasized above. Most recently, the Court has said:

> It is by now well settled that "the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'— an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Hays,* —— U.S. at ——, 115 S.Ct. at 2435 (ellipsis omitted) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)).

### A. INJURY IN FACT

#### 1

The injury-in-fact requirement "mandates that the party allege such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal jurisdiction." *Asso-ciated Builders & Contractors v. Perry,* 16 F.3d 688, 691 (6th Cir.1994) (internal quotation marks omitted) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)).

The district court held that the plaintiffs must present the court with a threatened injury but that they need not "await consummation of the threatened injury to seek relief," 894 F.Supp. at 1133 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1000, 102 S.Ct. 2777, 2784, 73 L.Ed.2d 534 (1982)), and that the "question becomes whether any perceived threat to [Plaintiffs] is sufficiently real and immediate to show an existing controversy...." *Id.* (quoting *O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974)). Because several Ohio children have died after their parents' religious beliefs led to a denial of adequate medical care, and the district court found the threatened injury in this action was real, *id.* (citing *State v. Miskimens,* 22 Ohio Misc.2d 43, 49, 22 O.B.R. 393, 400, 490 N.E.2d 931, 938 (Coshocton County, Ohio, Common Pleas Ct.1984)), the district court concluded the plaintiffs had alleged adequate injury in fact. *Id.*

#### 2

Trying to ascertain the plaintiffs' injury is like trying to catch a ghost in a gunnysack: Each time it appears within the grasp, it slips away.

In the second amended complaint, Brown and members of Children's Healthcare is a Legal Duty, Inc., state they do not believe it is effective to treat children's illnesses spiritually, through prayer alone. Brown believes Strubbe will continue to provide such spiritual treatment to the exclusion of medicine.

After the Browns were divorced in New Hampshire in 1987, the former Mrs. Brown and the children moved to Hamilton County, Ohio. Upon Brown's motion, New Hampshire courts amended the Browns' divorce decree to require that the children see a physician for periodic medical checkups and that Strubbe report to the physician any illnesses of the children. Brown obtained additional

safeguards in Ohio courts. Now he alleges that

> [t]he lives and good health of [his] minor children are threatened by the preference given by the State of Ohio in O.R.C. §§ 2919.22(A) and 2151.03(B) to spiritual treatment of children through prayer alone and the exemption from criminal liability provided to those who practice it on [his] minor children.

He further alleges that Strubbe has knowingly failed to provide periodic medical checkups and observation, and neglected to immunize both children against common childhood diseases.

Finally, the complaint avers that even though two Ohio Courts of Common Pleas have held OHIO REV.CODE § 2919.22(A) unconstitutional, both dismissed prosecutions of defendants who denied medical care to minors for religious reasons and were charged under the statute, because they did not have fair notice of the unconstitutionality of the exemption. This, the plaintiffs claim, deters—even prevents—criminal prosecutions of a parent, guardian, or custodian who "neglects or endangers the health of a child because of a religious belief." The plaintiffs assert that the exemptions in the Ohio statutes deny equal protection and due process to the class of children who are in the charge of the exempted persons, as well as to parents and guardians who are not exempted, and that the exemptions stigmatize the plaintiffs, as non-believers, and violate the Establishment Clause of the First Amendment.

### 3

Neither *Blum* nor *O'Shea*, on which the district court relied, supports the district court's conclusion that the plaintiffs here have alleged an injury in fact. In *Blum*, a class of Medicaid patients challenged decisions of nursing homes where they lived to discharge or transfer them without notice or opportunity for a hearing. The issue was whether the state of New York, which provided Medicaid assistance to eligible patients in these nursing homes, was subject to procedural strictures of the Fourteenth Amendment. *See* 457 U.S. at 993, 102 S.Ct. at 2780. Physicians chosen by the nursing homes pur-

suant to Medicaid regulations decided the patients' continued stay in the nursing homes was not medically necessary. The patients claimed there was a serious threat the nursing homes themselves would reach similar conclusions and discharge or transfer patients without adequate notice or hearings. *Id.* at 999–1000, 102 S.Ct. at 2783. The Court noted that there was no legal impediment to the nursing homes' independently determining that their patients' continued stay was no longer medically necessary, and held that "the threat of facility-initiated discharges or transfers to lower levels of care is sufficiently substantial that [the patients] have standing to challenge their procedural adequacy." *Id.* at 1000, 102 S.Ct. at 2784. The Court then stated that one "does not have to await the consummation of threatened injury to obtain preventive relief" (the language on which the district court here relied), *id.* (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 664, 67 L.Ed. 1117 (1923)), adding that the possibility that nursing homes would decide patients' continued stay is not medically necessary was not a possibility which was imaginary or speculative. *Id.* (quoting *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971) (holding that those having imaginary or speculative fears of state prosecution may not be plaintiffs in federal actions to stop a prosecution)).

However, a plaintiff does not have—and *Blum* did not hold that he has—an injury in fact merely because his alleged injury rises above the imaginary or speculative. *See id.* Plaintiffs must allege "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Hays,* —— U.S. at ——, 115 S.Ct. at 2435 (quoting *Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136). *Blum* was decided before *Lujan* and addressed only the requirement that, to have standing to bring an action, plaintiffs allege a threat of injury that is more than merely speculative. To the extent that *Blum* remains useful in the standing analysis, it is because its standard for the necessary injury meets the *Lujan* requirements. Clearly *Blum* required that plaintiffs allege an immi-

nent invasion of their legally protected interest in adequate discharge and transfer procedures. But *Blum* is of no help to these plaintiffs, who allege no comparable invasion of a legally protected interest.

In *O'Shea*, 19 respondents alleged that the petitioner judges violated respondents' constitutional rights by illegal bond-setting, sentencing, and jury-fee practices, but none of the 19 alleged that *he* had suffered any such injury. 414 U.S. at 495, 94 S.Ct. at 676. The Court surmised,

> If the statutes that might possibly be enforced against respondents are valid laws, and if charges under these statutes are not improvidently made or pressed, *the question becomes whether any perceived threat to respondents is sufficiently real and immediate to show an existing controversy* simply because they anticipate violating lawful criminal statutes and being tried for their offenses, in which event they may appear before petitioners and, if they do, they will be affected by the allegedly illegal conduct charged.

*Id.* at 496–97, 94 S.Ct. at 676 (emphasis added to show the language quoted by the district court in the action before us). This, the Court concluded, was speculation and conjecture, *id.* at 497, 94 S.Ct. at 676 (citing *Younger*, 401 U.S. at 41–42, 91 S.Ct. at 749), and did not amount to a case or controversy. *Id.* at 497, 94 S.Ct. at 677.

### 4

Most, if not all, of what the plaintiffs allege fails to state an injury in fact under *Lujan*. The plaintiffs do not assert, for example, that because they do not come within the exemptions, General Montgomery has prosecuted or threatens to prosecute *them* under the statutes in question. Clearly, when viewed in context, the language the district court took from *O'Shea*[3] does not support the

court's conclusion. The chance that the Attorney General[4] will providently enforce OHIO REV.CODE §§ 2919.22(A) and 2151.03(B) against the *plaintiffs* in this action does not even rise to the level of speculation and conjecture.

Neither do the plaintiffs' beliefs about (1) the effectiveness of treating illnesses through prayer, (2) the likelihood that Strubbe will continue to provide spiritual treatment to the children, (3) any preference which the statutes may or may not give to spiritual treatment of children, (4) any exemption of criminal liability for those who give such treatment, or (5) any deterrence or prevention of the prosecution of someone else who "neglects or endangers the health of a child because of a religious belief," assert an invasion of a legally protected interest of any of the plaintiffs which is concrete, particularized, and either actual or imminent.[5] Nor does what happened to other children, however tragic that may have been.

This leaves Brown's allegation that Strubbe has knowingly failed to provide the children periodic checkups/observations and immunize them against childhood diseases. I will assume, *arguendo*, that this states an injury in fact under *Lujan* for Brown and his children.

### B. CAUSAL CONNECTION

The second part of the standing inquiry requires "a causal connection between the injury and the conduct complained of." *Hays*, —— U.S. at ——, 115 S.Ct. at 2435 (quoting *Lujan*, 504 U.S. at 560–61, 112 S.Ct. at 2136). In this action, the inquiry is whether there is a causal connection between the conduct the plaintiffs complain of and what I will assume, *arguendo*, is an injury in fact to Brown and the children.

---

**3.** I recognize that *Blum* also quoted *O'Shea, see* 457 U.S. at 1000, 102 S.Ct. at 2784, and that both quoted *Younger*.

**4.** Or, for that matter, anyone else in Ohio.

**5.** What is clear from the complaint is that the plaintiffs want Strubbe prosecuted, or they want the sword of prosecution hanging over her. Because the exemptions in these statutes are road-

blocks to this, the plaintiffs want the federal courts to remove them. However, plaintiffs may not claim any injury in fact in this regard. A "private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 64, 106 S.Ct. 1697, 1704, 90 L.Ed.2d 48 (1986) (citations omitted).

The district court found that the "statute itself causes the immediate *threat of* injury. Therefore, the Plaintiffs' *cause of* injury *correlates directly* with the statute, and a sufficient nexus exists for the Plaintiffs to bring this claim." 894 F.Supp. at 1133 (emphasis added). I cannot agree.

The second element of the standing inquiry requires that there be actual causation between the challenged conduct and the claimed injury. The *Hays* Court cited *Lujan* for that proposition, and the *Lujan* Court cited *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). *Eastern Kentucky Welfare Rights* was an action in which plaintiffs challenged a revenue ruling, claiming that by adopting the ruling, the Internal Revenue Service "encouraged" hospitals to deny services to indigents. The Court reiterated the causation requirements for standing, and specifically noted that "the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Id.* The Court went on to point out that it was purely speculative whether the denials of service to indigents were fairly traceable to the claimed "encouragement" from the revenue ruling, or instead were the result of decisions the hospitals made without regard to the tax implications. *Id.* at 42–43, 96 S.Ct. at 1926.

The plaintiffs here simply cannot meet the causation requirement of the standing inquiry. They challenge no action of the defendants at all. At best, the challenge could be to these defendants' failure to prosecute individuals whom the statute expressly exempts from prosecution. Even if the fact is overlooked that no conduct of the defendants is the cause of the plaintiffs' claimed injury, the plaintiffs still fall short. Their claims here are analogous to the claims in *Eastern Kentucky Welfare Rights.*[6] The plaintiffs complain that because the challenged provisions

in Ohio's statutes create a religion-based class of parents or guardians and exempt them from criminal prosecution for denying, on religious grounds, medical attention to children in their charge, the minor plaintiffs have been or will be denied adequate medical care, and non-exempt parents and guardians have been or will be denied the equal protection of the laws. But it is purely speculative whether denials of medical attention by members of the exempted class are fairly traceable to the exemptions in the statutes, much less that any denial of equal protection to these plaintiffs can be traced to those exemptions. To find the required causal connection between the exemptions and the denial of medical care, one would have to assume that if the parents and guardians in the religion-based class were not exempt from prosecution, they would no longer deny medical treatment on religious grounds to children in their charge. And for the statutes' exemption of certain parents and guardians from the threat of prosecution to work a denial of equal protection to non-exempt parents and guardians, one would have to assume that such parents and guardians provide medical care to children in their charge only because of the threat of prosecution for failure to provide such care. This, in the words of Justice Scalia, "is beyond all reason." *Lujan,* 504 U.S. at 566, 112 S.Ct. at 2139. It is not the exemptions in the Ohio statutes that deny some children, including these minor plaintiffs, periodic medical checkups/observations or immunizations. It is the independent actions of their parents or guardians, third parties who are not before the court. And if some parents and guardians provide medical care to their children for reasons other than the threat of prosecution, then the exemption does not deny those parents and guardians equal protection; it simply does not affect them at all.

### C. Likely Redress

The district court concluded that if it found the exemption provisions in the statutes unconstitutional, the plaintiffs' "*threatened* inju-

**6.** *Eastern Kentucky Welfare Rights* named as defendants the Secretary of the Treasury and the Commissioner of Internal Revenue, who issued the challenged revenue ruling. 426 U.S. at 28, 96 S.Ct. at 1919–20.

ry would *subside....* Therefore, relief from injury will likely follow from this court issuing a favorable decision...." 894 F.Supp. at 1134 (emphasis added).

An inquiry such as this must address injuries in fact which are concrete, particularized, and either actual or imminent. And, as the district court recognized, *see id.* at 1133 (citing *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)), the third part of the standing inquiry requires that it "be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Hays,* —— U.S. at ——, 115 S.Ct. at 2435 (quoting *Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136).

The plaintiffs have sued General Montgomery, identifying her as Ohio's chief law officer and averring that her duties include appellate prosecution of offenses in conjunction with county prosecuting attorneys; prosecuting "any person indicted for a crime upon the written request of the Governor"; counseling a prosecuting attorney regarding any actual or prospective suit which involves the state; and, at the request of the Governor or the General Assembly, appearing before any court or tribunal in cases in which the state is directly interested.

Noting that the plaintiffs had filed this action against the Attorney General and two local prosecutors, the district court dismissed the local prosecutors, because they acted as state officials. 894 F.Supp. at 1131 (citing *Pusey v. City of Youngstown,* 11 F.3d 652, 657–58 (6th Cir.1993)). However, the district court incorrectly held that the Attorney General would represent the state's interest in this action. *See id.* And by stating, without citation, that the proper defendants in this type of action are the law makers, not the law enforcers, *id.* at 1132, and then refusing to dismiss the Attorney General, the district court incorrectly implied that the Attorney General is a law maker.

Even if the plaintiffs and the district court had accurately characterized the Attorney General's duties, *see generally* OHIO REV. CODE §§ 109.02 (Supp.1995), 109.14(A) (1994), 309.08(A) (Supp.1995), 1901.34(A)-(D) (Supp.1995), the plaintiffs could not meet the redressability requirement. Again, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond,* 476 U.S. at 64, 106 S.Ct at 1704 (citations omitted). We followed this principle in *Associated Builders,* 16 F.3d at 692, and held that the right to have the government follow the law is not by itself sufficient to confer jurisdiction in a federal court. *Id.* (quoting *Allen,* 468 U.S. at 754, 104 S.Ct. at 3326). The plaintiffs have no judicially cognizable interest in having Strubbe prosecuted or in having this sword—the threat of prosecution—hang over her, and in the absence of the challenged exemptions in the statutes, the plaintiffs could not compel the Attorney General to prosecute—or threaten to prosecute—the children's mother.[7]

Therefore, even if this court were to hold that the exemptions in question are unconstitutional, it is not "likely" that such a decision would redress any alleged injury to the plaintiffs. As in *Eastern Kentucky Welfare Rights,* it is purely speculative whether the invalidating of the challenged provisions of the statutes would redress the plaintiffs' claimed injury, *i.e.,* that simply removing the exemptions from the statutes would cure the alleged failure of the children's mother to provide them with periodic medical checkups/observations and have them immunized against childhood diseases.[8]

D

None of the individual plaintiffs having alleged facts demonstrating that he has standing to bring this action, it is clear that Children's Healthcare is a Legal Duty, Inc., whose membership is made up of individuals similarly situated to and having the same concerns as plaintiff Steven Brown, lacks

---

7. They also could not compel anyone else, including the local prosecutors, to prosecute, or threaten to prosecute, the children's mother, but that is not dispositive, because the local prosecutors are not before us.

8. Although other legal remedies are available to the father to have his children receive what he believes is proper medical care, that is not dispositive in this action.

standing as well. *See Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

### E

For the foregoing reasons, I would hold that the plaintiffs lack standing to bring this action.