Gus W. ZIELASKO and Nancy Bowman, Plaintiffs–Appellants,

v.

The STATE OF OHIO; Honorable Sherrod Brown, Ohio Secretary of State; Honorable Thomas Carr, Clerk of the Stark County Board of Elections; the Stark County Board of Elections, Defendants–Appellees.

No. 88–3800.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 16, 1988.

Decided May 3, 1989.

Donald C. Steiner (argued), Canton, Ohio, for Gus W. Zielasko and Nancy Bowman.

Andrew I. Sutter, Asst. Atty. Gen. (argued), Columbus, Ohio, for Sherrod Brown and the State of Ohio.

Ronald E. Stocker, Deborah A. Dawson, Asst. Pros. Atty., Canton, Ohio, for Thomas Carr and the Stark County Bd. of Elections.

Before MARTIN and JONES, Circuit Judges, and FEIKENS, Senior District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Gus W. Zielasko and Nancy Bowman appeal from an order of the United States District Court for the Northern District of Ohio dismissing this civil rights action, brought pursuant to 42 U.S.C. § 1983, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, 693 F.Supp. 577 (N.D.Ohio 1988). They seek declaratory relief stating that Article IV, Section 6(C) of the Ohio Constitution violates the United States Constitution. We find no such constitutional violation and so affirm the district court.

In reviewing this action, we take the facts alleged in the complaint considered and by the district court below as true. *Associated General Contractors of California v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983). Gus Zielasko is an incumbent municipal judge in Canton, Ohio. He is seventy-three years of age and wishes to seek re-election in 1989. Nancy Bowman is a registered voter in Canton who supports Zielasko's candidacy.

Article IV, Section 6(C) of the Ohio Constitution provides in part that "[n]o person shall be elected ... to any judicial office if on or before the day when he shall assume the office and enter upon the discharge of its duties he shall obtain the age of seventy years." Zielasko and Bowman filed a complaint in district court on November 4, 1987, alleging a violation of their civil rights pursuant to 42 U.S.C. § 1983. They sought a declaratory judgment to declare this provision of the Ohio Constitution unconstitutional.

On December 16, 1987 the Stark County Board of Elections and Thomas Carr, its clerk, answered the complaint. They denied parts of the complaint and asserted a number of affirmative defenses. The State of Ohio and Sherrod Brown, Ohio Secretary of State, answered the complaint and moved to dismiss on November 30, 1987 pursuant to Fed.R.Civ.Pro. 12(b)(1) and 12(b)(6). The plaintiffs responded to this motion on May 11, 1988. Two days later, plaintiffs filed an amended complaint. This contained additional facts, and it also requested a declaratory judgment as to the constitutionality of Article IV, Section 6(C) of the Ohio Constitution. The amended complaint did not allege that Article IV, Section 6(C) was an *ex post facto* law which denied Zielasko's rights guaranteed by the twenty-sixth amendment. Thus these claims were mooted and were not considered by the district court.

■ We believe the district court correctly held that it had jurisdiction over the subject matter of this case. The State of Ohio asserted that because no one had circulated or submitted nominating petitions for Zielasko's candidacy, there was no actual case or controversy in need of resolution. The district court noted that Article III of the United States Constitution provides that an actual case or controversy is a necessary condition for the invocation of federal jurisdiction. *See O'Shea v. Littleton,* 414 U.S. 488, 493, 94 S.Ct. 669, 674–75, 38 L.Ed.2d 674 (1974). Moreover, a person seeking federal jurisdiction must have "sustained or [be] immediately in danger of sustaining some direct injury," *Massachusetts v. Mellon,* 262 U.S. 447, 448, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923), an injury that is, "both 'real and immediate' not 'conjectural' or 'hypothetical.' " *O'Shea v. Littleton,* 414 U.S. at 494, 94 S.Ct. at 675,

---

* The Honorable John Feikens, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

(citations omitted). There was such an injury in this case. Section 3513.04 of the Ohio Revised Code requires a candidate for party nomination to file a declaration of candidacy and pay a filing fee. Section 3513.05 requires that a petition for candidacy signed by electors be submitted with the candidate's declaration. Section 3513.07 describes the form of the declaration and the petition. These two documents are to be filed as one instrument. The form for the declaration of candidacy requires the candidate to state, among other things, that he or she is a qualified candidate for the office he or she is seeking. This declaration is made under the threat of criminal penalty for "election falsification." The qualifications for municipal court judges found in section 1901.06 of the Ohio Revised Code do not refer to age. The district court, however, correctly found that because the Ohio Constitution contains an age requirement for judicial office, age must be considered a "qualification" for such office. Accordingly, the court concluded that by signing a declaration of candidacy Zielasko would be subject to the real and immediate (not merely conjectural or hypothetical) harm of criminal penalty. The fear of some certain legal penalty may constitute an actual harm or injury sufficient to save a case from dismissal where dismissal is sought on the ground that no actual case or controversy exists. *See Clements v. Fashing*, 457 U.S. 957, 961–62, 102 S.Ct. 2836, 2842–43, 73 L.Ed.2d 508 (1982).

Because Zielasko would have filed a declaration of candidacy *but for* the fear of criminal penalty for election falsification, a justiciable controversy exists in this case. Bowman's case is predicated upon this controversy. Zielasko must sign his declaration of candidacy before Bowman may sign or circulate petitions. Her alleged injury lies in being precluded from advancing Zielasko's candidacy.

■ The district court also found that Ohio was not entitled to dismissal based on eleventh amendment immunity. The court noted that the eleventh amendment does not necessarily bar suits brought in federal court seeking prospective injunctive relief. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Because Zielasko and Bowman seek to enjoin the future enforcement of a state constitutional provision they wished declared unconstitutional, the eleventh amendment does not apply.

■ Certain that Zielasko and Bowman were properly before the court, the district court considered their claim that Article IV, section 6(C) of the Ohio Constitution violated the equal protection clause of the fourteenth amendment. The court began by correctly noting that the threshold question in deciding an equal protection claim is to decide the appropriate level of scrutiny to apply to the restriction or classification at issue. In most cases distinctions and classifications "need only be drawn in such a manner as to bear some rational relationship to a legitimate state end." *Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982). Departure from this rational relationship test is permitted "only when the challenged statute places burdens upon 'suspect classes' of persons or on a constitutional right that is deemed to be 'fundamental.'" *Id.* (citation omitted). In such an instance courts are to apply strict scrutiny, that is, "'scrutiny' more vigorous than that which the traditional principles would require." *Id.* The district court correctly found that the rational relationship test was applicable to this case because age is not a "suspect" classification, *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976) and because, contrary to Zielasko and Bowman's assertions, running for office is not a "fundamental right," *Bullock v. Carter*, 405 U.S. 134, 142–43, 92 S.Ct. 849, 855–56, 31 L.Ed.2d 92 (1972).

The district court also noted that this Court applied the rational basis level of scrutiny to a city charter provision providing mandatory requirement for firefighters at age sixty. *Chapman v. City of Detroit*, 808 F.2d 459 (6th Cir.1986). Of perhaps even greater significance is the fact that several other federal courts of appeal have applied a rational basis analysis to statu-

tory and state constitutional provisions requiring judges to retire at a certain age. *See Malmed v. Thornburgh,* 621 F.2d 565, 570 (3rd Cir.1980); *Trafelet v. Thompson,* 594 F.2d 623, 630–31 (7th Cir.1979); *Rubino v. Ghezzi,* 512 F.2d 431, 433 (2nd Cir.), *cert. denied,* 423 U.S. 891, 96 S.Ct. 187, 46 L.Ed.2d 122 (1975).

If Zielasko and Bowman had only presented a simple equal protection challenge to section 6(C) the resolution of this case would have been a straight forward application of the traditional rational basis test. In addition to their equal protection claim, however, Zielasko and Bowman assert that section 6(C) raises a number of difficult questions concerning access to the ballot under the first and fourteenth amendments. They argue that where an equal protection claim is inextricably intertwined with ballot access issues, strict scrutiny is the appropriate level of review. The Supreme Court and this court have applied strict scrutiny to ballot access cases in the past. *See Illinois Elections Board v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *Goldman–Frankie v. Austin,* 727 F.2d 603 (6th Cir.1984).

■ The district court studiously noted that the Supreme Court has yet to decide what level of scrutiny is to be applied "when a candidate is barred by an age restriction which prevents a voter from electing him and the candidate and voter assert that their equal protection and first amendment rights have thus been violated." The court correctly perceived the challenge in this case as discovering a way "to harmonize the clear Supreme Court rulings that age restrictions need be tested only be a rational basis standard with the Supreme Court rulings in the ballot access cases where voters' first amendment rights are intertwined with the equal protection claims." The court concluded that the best way out of this judicial quagmire was to apply the complex balancing test announced in *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). We agree.

In *Anderson v. Celebrezze* the Supreme Court considered whether or not Ohio's early filing deadline for candidates for elective office violated the constitutional rights of John Anderson, an independent candidate for President, as well as the rights of his supporters. Ohio's statute would have prevented Anderson's appearance on the ballot in November but for the decision of the district court declaring the deadline unconstitutional. *Anderson v. Celebrezze,* 499 F.Supp. 121 (S.D.Ohio 1980). On appeal, following the election, this court reversed, finding that the deadline served an important state interest. *Anderson v. Celebrezze,* 664 F.2d 554 (6th Cir.1981).

The Supreme Court reversed. The Court first noted that its conclusions were based on the "basic constitutional rights" found in the first and fourteenth amendments and not upon "a separate Equal Protection Clause analysis." *Anderson v. Celebrezze,* 460 U.S. 780, 787 n. 7, 103 S.Ct. 1564, 1569 n. 7, 75 L.Ed.2d 547 (1983). The specific rights the Court had in mind were "the right of individuals to associate for the advancement of political beliefs and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Id.* at 787, 103 S.Ct. at 1569, *quoting Williams v. Rhodes,* 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). Despite the Court's characterization of these rights as "basic," *id.* at 788, 103 S.Ct. at 1569–70, the Court held that "not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates." *Id.* A state may have "important regulatory interests" in elections which are "sufficient to justify reasonable, non-discriminatory restrictions." *Id.* (footnote omitted).

The Court then articulated a balancing test for distinguishing those restrictions which serve "the State's important regulatory interests" from those which impose unconstitutional burdens on voters. *Id.* Under this test a court "must first consider the character and magnitude of the asserted injury to rights protected by the First and Fourteenth Amendments that the

plaintiff seeks to vindicate." *Id.* at 789, 103 S.Ct. at 1570. A court must then "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* This evaluation includes determining "the legitimacy and strength of each of those interests" and considering "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* Once a court has identified the voter's rights, the state's interests, and has observed the interrelation between them, only then is it "in a position to decide whether the challenged provision is unconstitutional." *Id.*

This balancing approach is to be used in place of any "litmus paper test" in the evaluation of constitutional challenges to state election laws. *Id.*, quoting *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). By this remark it seems the Court rejected the approach whereby a state election law is summarily categorized as being subject either to strict scrutiny or the traditional rational relation test. In accordance with this reading, the Court did not say what level of scrutiny it applied to Ohio's candidate deadline filing in *Anderson*. Zielasko and Bowman urge us to apply a "litmus paper test" to the facts of this case. *Anderson* precludes us from doing so.

■ The district court correctly applied the *Anderson* balancing test here. First, the court considered the alleged injury to Zielasko. It found that because Zielasko had no fundamental right to public employment, *Snowden v. Hughes*, 321 U.S. 1, 6–7, 64 S.Ct. 397, 400–01, 88 L.Ed. 497 (1944), and no fundamental right to run for elective office, *Bullock v. Carter*, 405 U.S. 134, 142–43, 92 S.Ct. 849, 855–56, 31 L.Ed.2d 92 (1972), he was not injured by Article IV, section 6(C) of Ohio's constitution. The court then examined the possibility of injury to Bowman. It found that Bowman, as a voter, has a right to associate and express her views through voting for a candidate of her choice. *Williams v. Rhodes*, 393 U.S. 23, 40–41, 89 S.Ct. 5, 15–16, (1968). The court found that section 6(C) did not "impose constitutionally sus-

pect burdens on [Bowman's] rights to associate or to choose among candidates." *Anderson v. Celebrezze*, 460 U.S. at 788, 103 S.Ct. at 1569. This is so because no one is guaranteed the right to vote for a specific individual. Moreover, her first amendment right to associate with a particular political party or with a candidate professing certain political views is not curtailed by section 6(C).

In the absence of any fundamental right belonging to either Zielasko or Bowman in the context of the *Anderson* balance, the district court applied a rational basis level of scrutiny to Ohio's age restriction for judicial candidates. The court readily found that the age ceiling for seeking elective judicial office contained in section 6(C) was "rationally related to furthering a legitimate state interest" whether judges may agree personally or not. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. at 312, 96 S.Ct. at 2566.

We agree with the district court's conclusion that under the traditional rational relation test, Zielasko and Bowman's claims fail. The Ohio Supreme Court reviewed the constitutionality of section 6(C) of the Ohio Constitution in *Keefe v. Eyrich*, 22 Ohio St.3d 164, 489 N.E.2d 259 (1986). As the district court noted, in *Keefe* the Ohio Supreme Court reviewed a number of reasons advanced which would justify the mandatory retirement of judges. Among the reasons considered were the ideas that mandatory retirement would make way for younger judges, ease court congestion by creating a pool of parttime judges, as well as prevent the harm that some older and no longer competent judges may cause. *Keefe v. Eyrich*, 22 Ohio St.3d at 166, 489 N.E.2d 259.

Whether or not these reasons were actually considered in establishing section 6(C) is irrelevant. *See Flemming v. Nestor*, 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). Similarly, whether we believe Ohio "was unwise in not choosing a means more precisely related to its primary purpose is irrelevant." *Vance v. Bradley*, 440 U.S. 93, 109, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979) *citing Califano v. Jobst,*

434 U.S. 47, 56–58, 98 S.Ct. 95, 100–02, 54 L.Ed.2d 228 (1977). That these reasons at least arguably provide a rational basis for the mandatory retirement of judges is sufficient for section 6(C) to survive under the constitutional standard we have described. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 *reh. denied*, 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981).

The judgment of the district court is affirmed.

NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's decision to dismiss Zielasko's equal protection claim. However, I would reverse the district court's order dismissing Bowman's first amendment claim because section 6(C) places an impermissible burden on her right to support a qualified candidate of her choice.

The majority determines that, based on the balancing test articulated in *Anderson*, the scales tip in favor of the state's alleged interests, in part because Bowman has not asserted any "fundamental right" which section 6(C) has abridged. I strongly disagree with the majority's evaluation of Bowman's asserted rights. Although it is true that "no one is guaranteed the right to vote for a specific individual," *ante* at 961, section 6(C) denies Bowman the right to vote not only for Zielasko but also for any qualified judicial candidate over 70 years of age who seeks re-election. In addition, although candidates for judicial office are prohibited from announcing their views on political issues, I disagree with the majority's claim that Bowman's "first amendment right to associate … with a candidate professing certain political views is not curtailed by section 6(C)." *Id.* While a judge who is seeking re-election may not explicitly state his political views, by examining the judge's past decisions, a voter may very well support him based on her *perception* that his future rulings will advance her political views.

The Supreme Court has held that states have the right to impose reasonable election requirements which may prevent individuals from seeking elected office. However, while requirements concerning minimum age, residency or general filing deadlines are constitutionally permissible, these requirements *temporarily* burden a voter's right to support an individual candidate. The candidate eventually can satisfy these requirements by waiting until she reaches the minimum age, by establishing residency or by timely filing her petition. In contrast, Bowman can *never* vote for Zielasko because he can never reverse the permanent and inevitable process of aging.

There is no dispute that the State of Ohio has a compelling interest in maintaining a competent judiciary and in avoiding the spectacle of having hearings for allegedly incompetent judges. However, because Ohio state court judges are elected, Ohio voters can always "mandatorily retire" an incompetent judicial candidate by not voting him into office or by voting him out of office. The State's interest in maintaining a competent judiciary is therefore ensured by the democratic elective process. Therefore, because of the "character and magnitude" of the injury to Bowman's first amendment rights, because Ohio has a built-in mechanism for maintaining a competent judiciary and because Ohio could have enacted legislation which was considerably less burdensome to Bowman's protected rights, the *Anderson* balancing test tips decidedly in favor of the injury to Bowman and other voters' first amendment rights. Thus, pursuant to *Anderson*, the district court and the majority should have applied a strict scrutiny test to Ohio's age restriction for judicial candidates.

The Supreme Court held in *Illinois Elections Bd. v. Socialist Workers Party*, 440 U.S. 173, 183, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979), that, in applying a strict scrutiny test to determine whether an election requirement significantly interferes with a voter's access to the ballot, courts "must first examine the character of the classification in question, the importance of the individual interest at stake, and the state interests asserted in support of the classifi-

cation." The Court stressed that "[r]estrictions on access to the ballot burden two distinct and fundamental rights, 'the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively.'" *Id.* at 184, 99 S.Ct. at 990 (citing *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968)). Examining the "character" of the election requirement, section 6(C) disqualifies *all* judges who are over 70 years of age—not only incompetent judges. With respect to the individual interest at stake, Bowman has a constitutionally protected interest in associating with other voters to support judicial candidates of her choice. Finally, the State of Ohio has offered no reasons which justify the mandatory retirement of judges. While the reasons assumed by the Ohio Supreme Court, the district court and the majority in this case may "arguably provide a rational basis for the mandatory retirement of judges," *ante* at 961, under a strict scrutiny analysis the *State* must provide justifications in support of the challenged legislation. *See Illinois Elections Bd.*, 440 U.S. at 183, 99 S.Ct. at 989–90. Since Ohio has failed to articulate any persuasive justification for this burdensome legislation, I see no grounds upon which to uphold section 6(C).

Applying the test articulated in *Illinois Elections Bd.*, I would strike a considerably different balance than the majority has struck. Because the majority applied a rational basis level of scrutiny and holds that section 6(C) does not violate "any fundamental right belonging to ... Bowman," I respectfully dissent.