**Honorable Kym L. WORTHY, Romona Mckinney, and Reginald Crawford, Plaintiffs,**

v.

**State of MICHIGAN, Michigan Department of State, Bureau of Elections, Secretary of State Candice S. Miller, Chief Elections Officer, and Teola P. Hunter, Clerk for the County of Wayne, Defendants.**

No. 00–71219.

United States District Court, E.D. Michigan, Southern Division.

April 24, 2000.

consideration under Fed.R.Evid. 801–807 for trial.

John F. Royal, Lisa L. Dwyer, Kevin Ernst Assoc., Detroit, MI, for Plaintiffs.

Katherine C. Galvin, Michigan Department of Attorney General, Public Employment & Elections Division, Lansing, MI, Charles N. Raimi, James A. Smith, Bodman, Longley, Detroit, MI, for Defendants.

## OPINION & ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND DISMISSING THE COMPLAINT WITH PREJUDICE

EDMUNDS, District Judge.

This matter comes before the Court on Plaintiffs' Hon. Kym Worthy, Romona McKinney and Reginald Crawford's motion for preliminary injunction. Plaintiffs seek a preliminary injunction barring the State of Michigan from enforcing a provision of the Michigan Constitution which prohibits a sitting judge from becoming "nominated for or elected to an elective office other than a judicial office during the period of [the judge's] service and for

one year thereafter." MICH. CONST.1963, Art. 6, § 21. Plaintiffs contend that the state constitutional provision is unconstitutional under the First, Fifth and Fourteenth Amendments to the Constitution. As discussed below, the motion is DENIED and the complaint is DISMISSED WITH PREJUDICE.

## I. Facts

The facts are not in dispute. During oral argument in this matter, the parties agreed to combine the hearing on the motion for preliminary injunction with a trial on the merits, as permitted by Federal Rule of Civil Procedure 65(a)(2). Fed. R.Civ.Pro. 65.

Plaintiff, the Honorable Kym Worthy, is a sitting Wayne County Circuit Court Judge who wishes to run for Wayne County Prosecutor for the term beginning January 1, 2001. Plaintiffs Romona McKinney and Reginald Crawford ("Voter Plaintiffs") are Wayne County voters who would allegedly support Judge Worthy's candidacy. The Defendants are the State of Michigan, Michigan Department of State, Bureau of Elections, Secretary of State Candice Miller, and Teola Hunter, entities and individuals who are responsible for the implementation and enforcement of Michigan state election laws.

A provision of Michigan's Constitution temporarily prevents Judge Worthy from becoming a candidate for the prosecutorial office she intends to seek. Article 6, section 21 of the Michigan Constitution provides: "Any justice or judge of a court of record shall be ineligible to be nominated for or elected to an elective office other than a judicial office during the period of his [or her] service and for one year thereafter." MICH. CONST.1963, Art. 6, § 21.

This provision requires Judge Worthy to resign and wait one year before she is eligible for candidacy. The current Wayne County Prosecutor, John O'Hair, has decided not to seek reelection. Although there is no official date upon which he announced this decision, as early as September 1998, it was suggested that he may retire and speculation began with respect to who would replace him. *See* Joe Swickard, *Prosecutor May Retire in 2000,* Detroit Free Press, September 16, 1998, *http://www.freep.com/news/locway/qoh-air16.htm.*

## II. Standard for Preliminary Injunction

■ The availability of injunctive relief is a procedural question that is governed by federal law. *Southern Milk Sales, Inc. v. Martin,* 924 F.2d 98 (6th Cir.1991). The Sixth Circuit has held that a court must consider four factors in deciding whether to issue a temporary restraining order or preliminary injunction:

(1) whether the movant has shown a strong or substantial likelihood of success on the merits;

(2) whether the movant has demonstrated irreparable injury;

(3) whether the issuance of a preliminary injunction would cause substantial harm to others; and

(4) whether the public interest is served by the issuance of an injunction.

*Rock and Roll Hall of Fame v. Gentile Productions,* 134 F.3d 749, 753 (6th Cir. 1998); *See also Parker v. United States Dept. of Agriculture,* 879 F.2d 1362, 1367 (6th Cir.1989).

■ The foregoing considerations are "factors to be balanced, not prerequisites that must be met." *Mascio v. Public Employees Retirement System of Ohio,* 160 F.3d 310 (6th Cir.1998), quoting *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985). Where the three factors other than the likelihood of success on the

merits all strongly favor issuing the injunctive relief, a district court is within its discretion in issuing the order if the merits present a sufficiently serious question to justify further investigation. *In re DeLorean*, 755 F.2d at 1230. Alternatively, the court may also issue injunctive relief if the movant, "at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1270 (6th Cir. 1985).

## III. Analysis

### A. Likelihood of Success on the Merits

### 1. Equal Protection

### a. Candidate's Rights: Plaintiff Judge Worthy

### i. Principles and Applicable Standard of Review

Plaintiff Worthy challenges the Michigan constitutional provision on equal protection grounds. The United States Supreme Court has recognized that under the Equal Protection Clause, states are granted "considerable leeway to enact legislation that may appear to affect similarly situated people differently." *Clements v. Fashing*, 457 U.S. 957, 962–63, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982)(plurality opinion). The *Clements* Court reminded us that legislatures are presumed to have acted constitutionally, and that "[u]nder traditional equal protection principles, distinctions need only be drawn in such a manner as to bear some rational relationship to a legitimate state end." *Id.* at 963, 102 S.Ct. 2836. The Court departs from these traditional principles "only when the challenged statute [or provision] places burdens upon 'suspect classes' of persons or on a constitutional right that is deemed to be 'fundamental.'" *Id.* Accordingly, in assessing the federal constitutionality of this state constitutional provision, the Court must apply traditional principles of equal protection analysis, unless the provision at issue burdens a suspect class, or a fundamental right.

■ The Supreme Court does not recognize candidacy as a fundamental right: "Far from recognizing candidacy as a 'fundamental right,' we have held that the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" *Id.* (quoting *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972)). The Supreme Court cases require the Court to assess candidate restrictions by examining "in a realistic light the extent and nature of their impact on voters." *Id.* There is no "litmus test" for assessing challenges to state provisions which restrict ballot access. *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). Rather, the Supreme Court has stated:

> Decision in this area of constitutional adjudication is a matter of degree, and involves a consideration of the facts and circumstances behind the law, the interests the State seeks to protect by placing restrictions on candidacy, and the nature of the interests of those who may be burdened by the restrictions.

*Clements*, 457 U.S. at 963, 102 S.Ct. 2836 (citing *Storer v. Brown*, 415 U.S. at 730, 94 S.Ct. 1274 (1974); *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)).

■ Where the "availability of political opportunity" is unfairly or unnecessarily burdened by the restriction, the Court will depart from traditional rational basis review. *Lubin v. Panish*, 415 U.S. 709, 716, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974). There are two lines of cases which may

require the Court to apply a stricter level of scrutiny. The first line involves classifications based on wealth. For example, the Supreme Court has applied a higher level of scrutiny in a case involving "candidate filing fee provisions" on the grounds that such a system "falls with unequal weight on voters, as well as candidates, according to their economic status." *Bullock v. Carter*, 405 U.S. at 144, 92 S.Ct. 849; *see also Lubin*, 415 U.S. at 717–18, 94 S.Ct. 1315 ("[w]hatever may be the political mood at any given time, our tradition has been one of hospitality toward all candidates without regard to their economic status." *Id.*)

The Supreme Court also recognizes a departure from the traditional equal protection analysis where the challenged classification "involves classification schemes that impose burdens on new or small political parties or independent candidates." *Clements*, 457 U.S. at 964, 102 S.Ct. 2836 (citing *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *Storer v. Brown*, 415 U.S. at 730, 94 S.Ct. 1274 (1974); *American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)). State rules requiring minority party candidates or independent candidates to demonstrate a certain level of support before they are eligible for the ballot have been analyzed with stricter scrutiny. The Court has made clear that "a State may not act to maintain the 'status quo' by making it virtually impossible for any but the two major parties to achieve ballot positions for their candidates." *Clements*, 457 U.S. at 965, 102 S.Ct. 2836.

■ The state requirement under attack here is found in Article 6, section 21 of the Michigan Constitution. That provision provides: "Any justice or judge of a court of record shall be ineligible to be nominated for or elected to an elective office other than a judicial office during the period of his [or her] service and for one year thereafter." MICH. CONST.1963, Art. 6, § 21. The effect of the provision is to render sitting judges ineligible for elective non-judicial office during their term of service and for one year thereafter. It requires a sitting judge to either wait until his or her term is completed plus one year before running for office, or requires the judge to resign during his or her term, and wait a year before placing his or her hat in the political ring. The state provision does not make classifications based on wealth, nor does it burden minority or independent political hopefuls. Accordingly, it does not require heightened review under either of those two lines of cases.

The Court proceeds cautiously, however, because the Supreme Court has made clear that the fact that the state provision does not affect wealth or minority candidacy, does not mean that rational basis review automatically applies: "It does not automatically follow, of course, that we must apply traditional equal protection principles in examining ... [the state provisions] ... merely because these restrictions on candidacy do not fall into the two patterns just described." *Clements*, 457 U.S. at 965, 102 S.Ct. 2836. The fact that the restriction does not fall into one of these two categories "counsel[s] against discarding traditional principles without first examining the nature of the interests that are affected and the extent of the burden these provisions place on candidacy." *Id.* (citing *Bullock*, 405 U.S. at 143, 92 S.Ct. 849).

The Supreme Court first explores the nature of the restriction prior to applying a certain level of scrutiny. In *Clements*,

for example, the Court considered and upheld the constitutionality of two provisions of the Texas Constitution. The first provision, relevant here, prohibited current officeholders from cutting short their term of office in order to seek office in the legislature.[1] The provision, as applied in *Clements*, required a Justice of the Peace to "complete his 4–year term ... before he may be eligible for the legislature." *Clements*, 457 U.S. at 967, 102 S.Ct. 2836. The Court noted that "at most, therefore, [the Justice of the Peace] must wait two years—one election cycle—before he may run as a candidate for the legislature." *Id.* In assessing the constitutionality of the restriction, the Court reasoned that the burden on the would-be candidate was de minimis. The Court stated: "In establishing a maximum 'waiting period' of two years for candidacy by a Justice of the Peace for the legislature, § 19 places a de minimis burden on the political aspirations of a current officeholder." *Id.* The Court elaborated as follows:

> Section 19 discriminates neither on the basis of political affiliation nor on any factor not related to a candidate's qualification to hold political office. Unlike filing fees or the level-of-support requirements, § 19 in no way burdens access to the political process by those who are outside the "mainstream" of political life. In this case, § 19 burdens only a candidate who has successfully been elected to one office, but whose

political ambitions lead him to pursue a seat in the Texas Legislature.

*Clements*, 457 U.S. at 967, 102 S.Ct. 2836.

The Court applied rational basis review to this provision. *Id.* at 967, 102 S.Ct. 2836. In determining whether rational basis review should apply here, the Court must begin by assessing the nature and burdens of the state's restriction on candidacy. *Clements*, 457 U.S. at 966, 102 S.Ct. 2836 ("Thus it is necessary to examine the provisions in question in terms of the extent of the burdens that they place on the candidacy of current holders of public office." *Id.*).

The Michigan constitutional provision requires a sitting judge to do one of two things before he or she can be eligible to run for non-judicial elective office. The judge must either complete his or her term and wait one year before becoming a candidate, or resign his or her current judicial position and wait a year before running. MICH. CONST. 1963 Art. 6, § 21.

Plaintiff Worthy places much emphasis on the fact that the restriction on candidacy requires her to wait one year before running. Plaintiff contends that the constitutional provision must place a significant burden on candidacy because in the twenty-two years that her counsel has practiced law he has only known of two individuals who resigned judgeships and then ran for office a year later.[2]

---

1. The second provision involved the constitutionality of the resign-to-run requirement of the Texas Constitution. *See Clements*, 457 U.S. at 970, 102 S.Ct. 2836. The Court upheld the constitutionality of the requirement, noting that the burdens imposed by the requirement were "even less substantial than those imposed by [the provision requiring current officeholders to complete their terms before running for the Texas legislature]." *Id.* at 970–71, 102 S.Ct. 2836. Plaintiff Worthy does not challenge the requirement that a sitting judge resign his or her position before

declaring candidacy. *See* Pls' Br. at 3; Mich. Code of Judicial Conduct, Canon 7(3).

2. Mayor Dennis Archer resigned his position as a Michigan Supreme Court Justice, practiced for one year at Dickinson, Wright, and then ran for Mayor. Current Wayne County Prosecutor John O'Hair also complied with the provision by resigning his position as a Wayne County Circuit Court Judge and waiting one year before he became eligible for an appointment as Wayne County Prosecutor.

Further, it is argued that it is difficult for individuals in Plaintiff Worthy's position to obtain a job for only one year. She contends that it would be impractical for her set up a private law office, and that "[m]ost firms are not interested in hiring lawyers, even former Judges, who are only interested in making a one year commitment and then plan to run for a non-judicial public office." Pls.' Reply Br. at 11. She contends that governmental agencies will likewise be reluctant to hire an individual who is only interested in working for one year. She argues that "[o]bviously, politically prominent Judges and Justices will have an easy time finding employment for one year while enduring their constitutionally mandated period of ineligibility." *Id.* She contends, however, that "the vast majority of sitting state court Judges and their supporters are unlikely to find these possibilities very appealing, especially in light of the fact that they may end up resigning, waiting a year, running for a non-judicial office, and then losing." The Court notes that the fact that Plaintiff may not find her options appealing or convenient does not transform the state provision into a burdensome restriction. Nor is it relevant to the analysis that the resigning Judge who complies with the provision may ultimately lose the election.

Plaintiff compares her station to that of the other announced candidates for Wayne County Prosecutor. The other candidates, she argues, occupy powerful government positions and will remain in those positions throughout their candidacy. While she does not accuse the other candidates of wrong-doing, she points out that "[a]ll of these candidates have politically influential positions which can theoretically be used to gauge support, line up contributors and curry favors." *Id.* at 12. Plaintiff contends that the constitutional provision creates a significant barrier to candidacy:

It is an extreme personal, professional, and financial hardship to resign an elected position as a state court Judge in Michigan. This requirement alone, which Plaintiffs do not challenge, imposes a significant barrier to sitting Judges who desire to move into non-judicial public service. To add to this already high obstacle a one year period of ineligibility, followed by an election campaign which may be unsuccessful, in practical terms creates a barrier that is so high that the vast majority of sitting state court Judges will never even consider seeking an elective, non-judicial position.

*Id.* at 12–13.

Plaintiff Worthy also contends that the state interests sought to be protected by the provision can all be served by the resign-to-run provision. "A corrupt Judge who wants to use his/her judicial position to improperly lining up supporters and contributors, and gauge support for an eventual run for non-judicial public office will do so whether or not there is a one year period of ineligibility which must be served prior to running for the non-judicial office." *Id.* at 14.

The Court has evaluated the alleged burdens set forth by Plaintiff Worthy. The burdens created by the constitutional provision at issue are content-neutral, and do not create invidious classifications based on impermissible factors. Plaintiff Worthy does not have a fundamental right to public employment, *Snowden v. Hughes,* 321 U.S. 1, 6–7, 64 S.Ct. 397, 88 L.Ed. 497 (1944), nor does she have a "fundamental right to run for elective office, *Bullock v. Carter,* 405 U.S. 134, 142–43, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972)." *Zielasko v. State of Ohio,* 873 F.2d 957, 961 (6th Cir.1989). In light of these circumstances, the Court applies rational basis review to test the

constitutionality of the state provision. *Id.; Clements,* 457 U.S. at 967–68, 102 S.Ct. 2836; *Storer v. Brown,* 415 U.S. at 733–37, 94 S.Ct. 1274;(applying rational basis review to statute disqualifying any candidate seeking to run in a party primary if he or she had been registered or affiliated with another political party in the twelve months preceding his or her announcement of candidacy); *Chimento v. Stark,* 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973)(applying rational basis review to a provision imposing a seven year residency requirement on candidates); *Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. at 189, 99 S.Ct. 983 (Stevens, J., concurring in part and in the judgment). *League of Women Voters v. Diamond,* 923 F.Supp. 266, 269 (D.Me.1996) *aff'd,* 82 F.3d 546 (1st Cir.1996)(per curiam).

### ii. Rational Basis Review

The *Clements* Court found that the provision at issue therein was clearly supported by a rational basis:

> Section 19 clearly rests on a rational predicate. That provision furthers Texas' interests in maintaining the integrity of the State's Justices of the Peace. By prohibiting candidacy for the legislature until completion of one's term of office, § 19 seeks to ensure that a Justice of the Peace will neither abuse his position nor neglect his duties because of his aspirations for higher office. The demands of a political campaign may tempt a Justice of the Peace to devote less than his full time and energies to the responsibilities of his office. A campaigning Justice of the Peace might be tempted to render decisions and take actions that might serve more to further his political ambitions than the responsibilities of his office. The State's interests are especially important with regard to judicial officers. It is a serious

accusation to charge a judicial officer with making a politically motivated decision. By contrast, it is to be expected that a legislator will vote with due regard to the views of his constituents.

*Id.* at 968, 102 S.Ct. 2836.

The Court also noted Texas' interest in discouraging current Justices of the Peace from leaving their terms of office early. "By requiring Justices of the Peace to complete their current terms of office, the State has eliminated one incentive to vacate one's office prior to the expiration of the term. The State may act to avoid the difficulties that accompany interim elections and appointments." *Id.*

■ Likewise here, there are several rational justifications for the constitutional provision. The purpose of the Michigan constitutional provision is to divorce the judiciary from the political arena. The provision serves to separate the candidate's political, legislative, or executive branch ambitions from any impact they may have on his or her decision-making process or integrity as a Judge. The judiciary is unique in our system of government in that those who hold judicial office are expected and in fact required to view issues with a neutral eye and to hear litigants with an unbiased ear. Future political aspirations may cloud this imperative neutrality. The individuals of the State of Michigan recognized the importance of maintaining the integrity of the judiciary in enacting this provision of their Constitution. The provision ensures that judges will neither abuse their position nor neglect their duties because of aspirations for other political offices. The provision rests on a rational predicate and is accordingly constitutional.

Plaintiff's contention that the same purposes could be served by mere enforcement of the resign-to-run requirement is

to no avail. The resign to run procedure does not ensure a divorce between the judiciary and the political arena the way that the one year waiting period does. A candidate for political office must garner support, line up contributors and make his or her intentions to run known publicly. If only the resign to run provision applies, a current sitting member of the judicial bench will inevitably be engaged in these campaign preparation activities while serving his or her judicial term.

Plaintiff also seeks to distinguish *Clements* factually, noting that the Texas provision allowed a judge to declare candidacy while sitting as a judge so long as the term of office for which the judge ran would begin after his or her judicial term expired. This factual distinction does not require a different result. The language of *Clements,* while it did not address the specific factual scenario present here, applies to cover the situation at hand, as does the underlying policy of that decision. The Court must look at the extent of the burden placed on the candidate and ascertain whether there is a rational justification for it. *Clements* made clear that a waiting period is not a significant barrier to candidacy. The substance of the waiting period upheld in *Clements* required a judge to stay in his or her position until the end of the term before seeking a different elective office. The substance of the waiting period in Michigan is that the judge who resigns must seek other employment for one year before running for political office. The Michigan provision does not require the judge to be unemployed for a year, or to work in another field, or a different profession. The state requires that the judge resign and wait before seeking elective office. During this time, the recently resigned judge will presumably be putting together his or her candidacy. That the people of the State of Michigan sought to have this campaigning done while the candidate was not a judicial officer rests on a rational basis. That the people of Texas sought to preserve their election system in a different manner than the people of Michigan sought to preserve theirs does not render the Michigan requirement unconstitutional.

Furthermore, Plaintiff stresses that the application of this provision has only resulted in two individuals having successfully followed the burdensome procedure, Mayor Dennis Archer and current Wayne County Prosecutor John O'Hair. The Court does not find this "evidence" to be persuasive on the issue of burden. First, in examining the extent of the burden in *Clements,* the Court did not concern itself with how many other candidates had been affected by the provision in the past, or how may had chosen to follow the state procedure. Furthermore, counsel for Defendants mentioned the two prominent individuals who have followed the procedure. There could be others, as the list of two was not compiled based on any study or research. Finally, even assuming that only two individuals have complied with the provision does not necessarily support the inference that the burden must be great. Judicial office is highly sought after in this state, as in all others. It may be the case that there are few individuals who, after attaining a position as a judge, simply do not wish to seek elective political office. Thus the evidence of only two individuals having decided to resign, wait, and run, may also simply suggest that judges are content in their positions as judges.

In any event, if the provision has a rational foundation, it is not the province of this Court to challenge its wisdom or to second-guess the state's policy judgment. *Clements,* 457 U.S. at 973, 102 S.Ct. 2836 ("[o]ur view of the wisdom of a state constitutional provision may not color

our task of constitutional adjudication." *Id.*); *Stiles v. Blunt,* 912 F.2d 260, 267 (8th Cir.1990)("[w]e are not permitted to substitute our policy judgment for that of the state under the guise of applying the rational relationship test." *Id.*) *cert. denied,* 499 U.S. 919, 111 S.Ct. 1307, 113 L.Ed.2d 241 (1991); *Zielasko v. Ohio,* 873 F.2d 957, 961–62 (6th Cir.1989); *Dutmer v. City of San Antonio,* 937 F.Supp. 587, 588–89 (W.D.Tex.1996). Further, as *Clements* teaches, "[u]nder traditional equal protection principles, a classification is not deficient simply because the State could have selected another means of achieving the desired ends." *Clements* 457 U.S. at 969, 102 S.Ct. 2836 (citing *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 316, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Mathews v. Diaz,* 426 U.S. 67, 83, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 51, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)).

In sum, Plaintiff Worthy's right to Equal Protection of the laws is not violated by the state provision.

#### b. Voter Plaintiffs' Rights

#### i. Standard of Review

The Court must next consider whether the provision at issue unconstitutionally burdens the Voter Plaintiffs' rights to equal protection. At the outset, the Court notes that "the rights of voters and the rights of candidates do not lend themselves to neat separation." *Bullock v. Carter,* 405 U.S. at 143, 92 S.Ct. 849.

■■■ The right to vote "is of the most fundamental significance under our constitutional structure." *Illinois Bd. of Elections v. Socialist Workers Pty.,* 440 U.S. 173, 184, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979). It does not automatically follow, however, that any law that imposes a bur-

den on the right to vote must be subjected to strict scrutiny. *Burdick,* 504 U.S. at 432, 112 S.Ct. 2059; *Bullock v. Carter,* 405 U.S. at 143, 92 S.Ct. 849; *Anderson v. Celebrezze,* 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *McDonald v. Board of Election Comm'rs of Chicago,* 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). The United States Constitution specifically empowers the states to prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives." U.S. Const, Art. I, § 4, cl. 1. The Supreme Court "has recognized that States retain the power to regulate their own elections." *Burdick,* 504 U.S. at 433, 112 S.Ct. 2059 (citing *Sugarman v. Dougall,* 413 U.S. 634, 647, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973)).

The Supreme Court has instructed that "[t]he appropriate standard for evaluating a claim that a state law burdens the right to vote is set forth in … [*Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) ]." *Burdick v. Takushi,* 504 U.S. 428, 438, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992):

> A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interest put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Burdick,* 504 U.S. at 434, 112 S.Ct. 2059 (quoting *Anderson,* 460 U.S. at 789, 103 S.Ct. 1564).

■■■ Under this test, the rigorousness of the inquiry depends on the extent of the burden. *Burdick,* 504 U.S. at 434, 112 S.Ct. 2059. Where the restriction is

severe, "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Norman v. Reed,* 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992)). On the other hand, "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick,* 504 U.S. at 434, 112 S.Ct. 2059 (quoting *Anderson,* 460 U.S. at 788, 103 S.Ct. 1564).

#### ii. Application of *Anderson* Test

■ Under the *Anderson* test, the Court must evaluate the burden on Voter Plaintiffs. The burden imposed upon them is that they are temporarily unable to vote for a candidate of their choice. It is clear, however, that a voter does not have an absolute right to vote for a specific candidate, or for a certain class of candidates. *Citizens for Legislative Choice v. Miller,* 144 F.3d 916, 921 (6th Cir.1998); *Miyazawa v. City of Cincinnati,* 45 F.3d 126, 128 (6th Cir.1995); *Zielasko v. Ohio,* 873 F.2d 957, 961 (6th Cir.1989). Accordingly, the burden on Voter Plaintiffs' rights is minimal.

The state provision, as discussed more fully above, is content neutral and does not draw classifications in an invidious or impermissible manner. Under these circumstances, and where the burden on Voter Plaintiffs is slight, the state need not set forth a compelling justification for its restriction. Instead, the state's important regulatory interests may justify the provision and its attendant burden on Voter Plaintiffs' rights.

■ As discussed above, the state has an important interest in regulating its elections and in imposing reasonable restrictions on candidacy. Here, the asserted interest in protecting the integrity of the judiciary and separating it from the political arena is an important one which outweighs the minimal burden placed on Voter Plaintiffs. The right to vote is vital to the preservation of our democracy: "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964). However, the "right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of our democratic system." *Anderson,* 460 U.S. at 788, 103 S.Ct. 1564.

In sum, the state provision does not violate Voter Plaintiffs' rights under the Equal Protection Clause.

### 2. First Amendment

#### a. Plaintiff Worthy

■ Nor does the state provision run afoul of the First Amendment. In *Clements,* the Supreme Court upheld the constitutionality of the Texas provisions at issue under the First Amendment. In so doing, the Court stated that their "analysis of appellees' challenge under the Equal Protection Clause disposes" of any argument that the provisions violate the First Amendment. *Clements,* 457 U.S. at 971, 102 S.Ct. 2836. The Court elaborated:

> We have concluded that the burden on appellees' First Amendment interests in candidacy are so insignificant that the classification of [the provisions at issue] may be upheld consistent with traditional equal protection principles. The State's interests in this regard are sufficient to warrant the de minimis interference with appellees' interests in candidacy.

*Id.* at 971–72, 102 S.Ct. 2836.

The Court also stressed that the plaintiffs were "elected state officeholders who

contest restrictions on partisan political activity" and that far more restrictive limitations have been upheld with regard to civil servants. *Id.* at 972, 102 S.Ct. 2836 (citing *CSC v. Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *United Pub. Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947)). The same applies here. Further, as in *Clements,* the state constitutional provision does not restrict Plaintiff Worthy's "ability to participate in the political campaigns of third parties," nor does it limit "political contributions [ ]or expenditures." *Id.* at 972, 102 S.Ct. 2836. Plaintiff Worthy's First Amendment rights are not offended.

### b. Voter Plaintiffs

■ Similarly, Voter Plaintiffs' First Amendment rights are not violated. As noted above, the rights of voters and those of candidates are not easily separated. *Burdick,* 504 U.S. at 438, 112 S.Ct. 2059. Voter Plaintiffs contend that the provision "arbitrarily and capriciously deprives [them] of their rights to associate to advance the candidacy of their preferred candidate for prosecuting attorney ...." Pls' Br. at 9. Although Voter Plaintiffs have a right to associate and express ... [their] views through voting for a candidate of ...[their] choice, *Zielasko v. Ohio,* 873 F.2d 957, 961 (6th Cir.1989)(quoting *Williams v. Rhodes,* 393 U.S. 23, 40–41, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)), this right is not absolute. The provision at issue does not impose a suspect burden on Voter Plaintiffs' rights to associate or to chose among candidates. The provision is content-neutral and it imposes only a temporary period of ineligibility on Plaintiff Worthy's candidacy. The restriction rests on important state interests in maintaining and preserving the integrity of the judiciary. The provision does not affect Voter Plaintiffs' right to "associate with a particular political party or with a candidate professing certain political views ..." *Zielasko,* 873 F.2d at 961. "[N]o one is guaranteed the right to vote for a specific individual." *Id.* The First Amendment rights of Voter Plaintiffs are not curtailed.

### 3. Fifth Amendment

■ Plaintiff Worthy also contends that the state provision violates her Fifth Amendment right to Due Process. In support of this claim, Plaintiff Worthy cites the following passage from a footnote in *Miller v. Lorain County Bd. of Elections,* 141 F.3d 252 (6th Cir.1998):

> It is difficult to define the contours of the right of candidacy. Given the integral relationship between candidacy and voters' rights under the First Amendment, candidacy may involve some level of a protected property or liberty interest. *See Duke v. Massey,* 87 F.3d 1226, 1232 (11th Cir.1996)("[A candidate] also has a procedural due process right to have his petition to be placed on the ballot to be free from a committee's unfettered discretion in rendering a decision."(citations and internal quotations omitted)).

*Miller,* 141 F.3d at 260, n. 8.

The Sixth Circuit merely alluded to due process in this passage. Further, there is no claim here that Plaintiff Worthy's potential candidacy is somehow subjected to or in jeopardy because of a committee's unfettered discretion. The Court declines to take the above quoted language and transform it into a due process right to candidacy. In the absence of a more clearly articulated claim for a violation of the Fifth Amendment, the Court finds that Plaintiff's Fifth Amendment rights, if any in this context, are not violated.

### B. Irreparable Harm, Harm to Others, Public Interest

Plaintiffs have no likelihood of success on the merits of their constitutional claims. Under these circumstances, a discussion of the remaining factors, i.e., irreparable harm, harm to others, and the public interest, need not be addressed. *Michigan AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir.1997). Because Plaintiffs' claims fail as a matter of law, the motion for preliminary injunction is DENIED.

### IV. Conclusion

Being fully advised in the premises, having read the pleadings, for the reasons stated on the record on April 24, 2000, and for the reasons set forth above, the Court hereby orders as follows:

Plaintiffs' motion for preliminary injunction is DENIED.

IT IS FURTHER ORDERED THAT the Complaint is DISMISSED WITH PREJUDICE.

SO ORDERED.

### JUDGMENT

Being fully advised in the premises, having read the pleadings, and this Court having DENIED Plaintiffs' motion for preliminary injunction, and having DISMISSED Plaintiffs' Complaint, the Court hereby orders as follows:

IT IS ORDERED THAT judgment be and hereby is entered in favor of Defendants and against Plaintiffs in this matter.

SO ORDERED.